UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| BOSS LADY ADVENTURES, LLC<br>Plaintiff | * | CIVIL ACTION |
| | * | NO. 22-170 |
| VERSUS | | |
| | * | SECTION L(2) |
| PORTIER FABRICATION, LLC,<br>ROBBIE PORTIER AND ASHLEY C. PORTIER<br>Defendants | *<br>*<br>* | |

**ORDER AND REASONS**

Pending before the Court is Defendant Portier Fabrication, LLC's Motion to Dismiss due to Improper Venue under Federal Rule of Civil Procedure 12(b)(3). R. Doc. 12. Plaintiff opposes the motion. Having considered the briefing of the parties and the applicable law, the Court now issues this Order.

**I.   BACKGROUND**

Boss Lady Adventures, LLC ("Boss Lady"), a company domiciled in Florida, approached Portier Fabrication, LLC ("Portier Fabrication"), a company domiciled in Louisiana, to discuss the possibility of Portier Fabrication constructing a vessel for Boss Lady. R. Doc. 1 at 1-3. On July 23, 2017, Boss Lady entered into a contract with Portier Fabrication for Portier Fabrication to construct a 78-foot steel fishing vessel to be named "Boss Lady" for a quoted price of $410,000. R. Doc. 1 at 3. Boss Lady claims to have entered into this contract with the understanding, as represented by Defendant Robbie Portier, that he and his business had over 40 years of experience building vessels of the kind desired by Boss Lady. *Id*.

On March 6, 2019, the parties entered into a "Phase 2 Agreement" defining the parties' obligations in the second phase of the vessel's construction. R. Doc. 1 at 3-4. Pursuant to the Phase 2 Agreement, the parties shifted from a fixed price to a time and materials contract. *Id*. On May 25, 2020, Boss Lady issued a cease and desist notice to Portier Fabrication instructing it to cease all work on the vessel until the parties could resolve disputes that had arisen over numerous delays as well as the quality of Portier Fabrication's construction work. *Id*. at 4. According to Boss Lady, on February 1, 2021, it informed Portier Fabrication that it intended to take possession of the vessel and have it inspected for deficiencies and completed by a third-party. *Id*. However, Portier Fabrication submitted to the Court an additional contract, the "Vessel Construction Separation Agreement" (the "Separation Agreement") which was signed by Boss Lady's representative on October 8, 2020, and by Portier Fabrication's representative on October 12, 2020. R. Doc. 12 at 5–11. The Separation Agreement laid out the terms of the dissolution of the parties' relationship and transfer of the incomplete vessel from Portier Fabrication to Boss Lady. *Id.* Ultimately, on February 3, 2021, Portier Fabrication issued a Bill of Sale and Builder's Certificate and transferred the vessel to Boss Lady. R. Doc. 1 at 4.

After taking possession, Boss Lady contracted with a third-party boat builder who inspected the vessel and identified numerous problems in its construction. *Id*. The third-party boat builder identified a laundry list of deficiencies and defects in the work performed by Portier Fabrication. Upon learning of these deficiencies, Boss Lady began contracting with other third-parties to correct the deficiencies, and is still in the process of obtaining invoices and receipts for the repairs, as well as still contracting to repair the remaining deficiencies. *Id*. at 6. Boss Lady claims over $75,000 in damages based on the cost of obtaining services to repair the vessel as well as direct losses from Portier Fabrication's performance under the Builder Contract and Phase 2

Agreement. *Id*. at 7. Boss Lady further claims that Portier Fabrication billed them for actions in constructing the vessel that were done improperly and thus have to be repaired or re-installed, and that Portier Fabrications fabricated time sheets, work orders, and invoices for incomplete work or work actually completed on unrelated vessels. *Id.*

Accordingly, Boss Lady claims that Portier Fabrication is liable for breach of contract, breach of warranty of workmanlike performance, unjust enrichment, intentional misrepresentation, redhibition, fraud, and violation of the Louisiana Unfair Trade Practices and Consumer Protection Act. *Id.* at 8-14. Boss Lady further claims that Ashley Portier and Robbie Portier are liable for intentional misrepresentation and fraud. *Id.* at 15-16.

## II. PRESENT MOTION

On February 16, 2022, Defendants filed the instant motion to dismiss pursuant to Rule 12(b)(3). R. Doc. 12. In this motion, Defendants argue that the forum selection clause in the Separation Agreement between the parties requires Plaintiff's claims to be brought in the 32nd Judicial District Court of Terrebonne Parish, Louisiana. They argue that under the terms of the Separation Agreement, that agreement supersedes any previous agreement between the parties; thus, that the forum selection clause applies to Boss Lady's claims even though the original Builder Contract between the parties contained no forum selection clause. Boss Lady filed its response on March 8, 2022. R. Doc. 14. Plaintiff argues that (1) it did not consent to the Separation Agreement despite having signed it; (2) if it did consent, that consent is vitiate by fraud; (3) if the Separation Agreement is binding, the forum selection clause still does not govern here because Plaintiff's claims do not "arise under" that contract.

### III.   LEGAL STANDARD

In considering a Rule 12(b)(3) motion, "the plaintiff has the burden of proving that the chosen venue was proper." *Broussard v. First Tower Loan, LLC*, 135 F. Supp. 3d 540, 544 (E.D. La. 2015). However, courts accept "a plaintiff's well-pleaded factual allegations as true and [draw] all reasonable inferences in plaintiff's favor[,]" *Asevedo v. NBC Universal Media, LLC*, 921 F. Supp. 2d 573, 589 (E.D. La. 2/4/13), *citing Langton v. Cbeyond Cmmc'n, LLC*, 282 F.Supp 2d 504, 508 (E.D. Tex 2003), and "must draw all reasonable inferences and resolve all factual conflicts in favor of the plaintiff." *Centurum Info. Tech. Inc. v. Geocent, LLC*, No. CV 21-0082, 2021 WL 533707, at *3 (E.D. La. Feb. 12, 2021). Accordingly, "The court accepts uncontroverted facts alleged in the complaint as true and resolves conflicts in the parties' affidavits in favor of the plaintiff." *Asevedo*, 135 F. Supp. 3d at 590, quoting *McCaskey v. Cont'l Airlines, Inc.*, 133 F. Supp. 2d 514, 523 (S.D. Tex. 2001).

### IV.   DISCUSSION

Boss Lady argues that it did not consent to the Separation Agreement despite having signed it. It points out that under Louisiana law, four elements are necessary for the confection of a valid contract: (1) the parties must have the capacity to contract; (2) the parties must freely give their mutual consent to the contract; (3) the parties must have a cause or reason for obligating themselves; and (4) the contract must have a lawful purpose. *Ingraffia v. NME Hosps., Inc.*, 943 F.2d 561, 565 (5th Cir. 1991) (internal citations omitted). Here, it argues, element (2) is unfulfilled because there was no "meeting of the minds" between the parties as to the Separation Agreement. It points to *Ingraffia* to support this argument. *Id.*

In *Ingraffia*, the Fifth Circuit invalidated a contract for want of consent, notwithstanding the fact that it had been signed by all parties. *Id.* There, the Court explained, although all parties

had signed the contract, correspondence between them indicated that one party to the contract intended for a yet-unsigned amendment that it attached to the signed contract to be approved as a prerequisite for its consent. *Id.* at 565-566. Because that party had sent the signed contract along with a letter stating that an included revision was unacceptable and needed to be replaced with a new amendment attached to the contract, the other party was on notice that mutual consent had not occurred between them. Notwithstanding the fact that the contract was fully signed, "there was no meeting of the minds. Both parties realized they did not agree." *Id.* at 566.

Boss Lady argues that the same applies in this case. It points to emails exchanged between the parties after the date when it signed the Separation Agreement and claims that those demonstrate that mutual consent has not occurred and that both parties realized this, notwithstanding the signed Separation Agreement. On this basis, Boss Lady asserts that the parties were clearly still in active negotiations over the terms of the Separation Agreement even after it had been signed by both parties.

The Court finds that it lacks enough information on the negotiations and intentions of the parties to decide the issue of whether the Separation Agreement constitutes a valid contract between the parties under Louisiana law at this stage. Accordingly, the Court must deny Defendants' motion. However, Defendants retain the right to reurge dismissal on this ground after the parties have conducted discovery.

V. **CONCLUSION**

For the foregoing reasons, Defendants' Motion to Dismiss is **DENIED WITHOUT PREJUDICE** to their right to reurge their motion after discovery is conducted.

New Orleans, Louisiana, this 18th day of July, 2022.

                                                 UNITED STATES DISTRICT JUDGE